BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**Plan of Dissolution**

- 9 -

4863-5739-7326.1

# PLAN OF DISSOLUTION OF ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM, INC.
## (A California Corporation)

## I.      Background

1.      Ericksen, Arbuthnot, Kilduff, Day, & Lindstrom, Inc. (the "Firm") is a California corporation engaged in the practice of law in various jurisdictions.

2.      Any terms used but not defined herein shall have the meaning ascribed to such term in the Firm's governing documents. To the extent that there are any conflicts between any provisions of the Firm's governing documents and the provisions of the Plan, the provisions of the Plan shall govern.

## II.      The Plan of Dissolution

1.      **Purpose.** The Plan has been designed to provide for an orderly winding up of the business and affairs of the Firm considering its current and projected financial condition and the potential business failure of the Firm. The objectives of this Plan are (a) that all work on Firm client matters will continue uninterrupted prior to, during and after each transfer of personnel out of the Firm, (b) that, to the extent possible, all Firm personnel are placed with other organizations, and (c) that the assets of the Firm are preserved and protected for the benefit of, first, the creditors of the Firm, and, thereafter, the shareholders and former shareholders of the Firm.

2.      **Plan Timing.** The Plan shall become effective upon the later of (i) December 9, 2022, or (ii) the date on which it is approved by the Firm's shareholders (the "Effective Date").

   a.  After the Effective Date, the Firm (the "Firm-in-Dissolution") will continue to exist for purposes of dissolution. The Firm-in-Dissolution may continue to engage in the practice of law for existing clients until all the lawyers working on client matters, individually or in groups, shall have combined with or shall have joined other law firms, shall have opened new law offices, or shall have ceased the private practice of law for any reason. It is expected that all lawyers will have left the Firm and all Firm premises on or before December 31, 2022, unless a separate written agreement has been entered into, with the Firm-in-Dissolution allowing such lawyer(s) to remain.

   b.  After December 31, 2022, the Firm-in- Dissolution will continue to exist solely for the purpose of (1) billing and collecting unbilled work-in-process and unbilled disbursements, (2) collecting accounts receivable, (3) selling or otherwise disposing of the Firm's other assets, (4) paying or otherwise discharging all claims against the Firm, or prosecuting claims the Firm may have against others, (5) taking any other action that is necessary or appropriate in connection with the Firm's winddown, and (6) distributing to the shareholders and former shareholders any remaining proceeds of the disposition of the Firm's assets. As set forth herein, it is anticipated that the Firm will file a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (which case may be filed under Subchapter V)

1

to conduct the orderly winddown, liquidation, and distributions contemplated herein.

3.      **Dissolution Committee.** The Firm hereby elects a Dissolution Committee initially consisting of Von Reyes, Sharon Hightower, and Terry Finch (the 'Dissolution Committee") to wind up the business and affairs of the Firm in accordance with this Plan. The Dissolution Committee shall have all the power and authority of the board of directors of the Firm in connection with the winding up of the business affairs of the Firm, shall act by majority of its members. The members of the Dissolution Committee and/or the law firm they are associated with shall be compensated at a rate of no more than $100 per hour. In addition, they shall be indemnified in accordance with the applicable provisions of this Plan and shall be entitled to reimbursement for legitimate out-of-pocket disbursements. The Manager (as defined herein) or his designee shall approve any distributions to the Dissolution Committee prior to such payments. Should members of the Dissolution Committee withdraw or be unable to serve for any reason, the Dissolution Committee shall continue and successor or successors members of the Dissolution Committee shall be appointed by a majority decision of the remaining members of the Dissolution Committee. If for any reason successor members of the Dissolution Committee are not timely made, successors may be named by the Manager (as defined herein).

4.      **Legal and Financial Advisors.** The Firm has retained the law firm of Baker & Hostetler LLP ("B&H") to advise the Firm in connection with its winddown and liquidation and anticipated bankruptcy filing, and retained the financial advisory firm of Development Specialists, Inc. ("DSI") as a financial advisor. The Firm may in the future retain other legal, accounting, or consulting firm in connection with the winddown process (the "Consultants").

5.      **Manager of Firm-In-Dissolution**.

    a.  **Appointment of Manager.** The Firm hereby appoints Kyle Everett of DSI to serve as the initial Manager of the Firm-in-Dissolution (the "Manager"). The Manger's role shall be effective as of the Effective Date.

    b.  **Authority of Manager**. The Manager shall have all the power and authority typically vested in a Chief Executive Office, Chief Financial Officer, and Chief Operating Officer of the Firm in connection with the winding up of the business affairs of the Firm. The Manager shall be afforded discretion in the exercise of his authority, and shall have no liability for the outcome of his decisions, except to the extent expressly set forth herein. The Manager's authority on behalf of the Firm shall include, but not be limited to:

        i.  making day-to-day business decisions on behalf of the Firm;

        ii.  receiving, managing, investing, supervising, protecting and liquidating the Firm's assets, and paying appropriate expenses, including but not limited to any expenses incurred in connection with the Firm's wind down or any bankruptcy case;

        iii.  executing, delivering, filing, and recording contracts, instruments, releases, indentures, certificates, and other agreements or

2

documents, and taking such actions, as the Manager may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions of the Plan;

iv. protecting, and enforcing the rights to, the Firm's assets by any method deemed appropriate, including by judicial proceeding;

v. retaining the services of other individuals and/or organizations to assist in carrying out the varied tasks involved in the liquidation, including legal counsel, consultants, accountants, collection companies, auctioneers and other professionals; and

vi. making decisions relating to the engagement and payment of employees or shareholders of the Firm in connection with the Firm's wind down or bankruptcy case.

c. **Removal of Manager.** The Manager may be removed from the position by the affirmative vote of a majority of the members of the Dissolution Committee only for cause, which shall be disclosed in writing to the Manager at the time of his removal. Any successor shall be appointed by a majority of the members of the Dissolution Committee. If no Manager is appointed by the Dissolution Committee, the Bankruptcy Court may appoint a successor.

6. **Liquidation Team.** The Manager, with the advice of the Consultants, will have full discretion to make decisions relating to retention of personnel and their roles, and all retained personnel shall report to the Manager (or the Manager's designee). The liquidation team collectively consists of the Manager, the employees or former employees of the Firm retained to assist in the liquidation, and the Consultants and their retained professionals (the "Liquidation Team"). The Liquidation Team is subject to the oversight and direction of the Dissolution Committee in the same manner that officers and employees of a corporation are subject to the direction of a Board of Directors. The Manager shall serve in all respects subject to the supervision of and shall report to, the Dissolution Committee. The Dissolution Committee may delegate to the Manager the same powers and authority which it has to wind-up the business and affairs of the Firm in accordance with the Plan and applicable law.

7. **Authorization to File Bankruptcy Case**. The Board and Shareholders of the Firm have concluded that it is in the best interest of the Firm to file a voluntary petition for relief under the Bankruptcy Code commencing a bankruptcy case (the "Bankruptcy Case"), which Bankruptcy Case may be filed under Subchapter V. By adopting this Plan, the board of directors and shareholders expressly approve and authorize the filing of the Bankruptcy Case. It is anticipated that such filing will occur in early 2023 in order to effectuate the orderly winddown of the Firm, liquidation of its assets, and appropriate distributions of its assets. The Manager or any member of the Dissolution Committee (each, an "Authorized Person") is authorized, empowered, and directed to execute any and all documents necessary to commence the Bankruptcy Case and to cause the same to be filed in an appropriate U.S. Bankruptcy Court in such form and at such time as shall be determined in consultation with the Firm's legal and financial advisors.

3

8. **Continued Existence of the Firm.** For the avoidance of doubt, the adoption of this Plan: (i) provides for the wind down of the business of the Firm; (ii) does not terminate its legal existence, and (iii) constitutes board of directors and shareholders consent to the formal termination of the legal existence of the Firm at an appropriate time without further action of the board of directors or shareholders.

9. **Board of Director and Shareholder Resolutions Authorizing Winddown and Dissolution.** The board of directors and shareholder resolutions authorizing the winddown and dissolution of the Firm are hereby adopted and incorporated by reference into this Plan. To the extent possible, such resolutions and this Plan shall be read together as a single document. In the event of a direct conflict, the terms of this Plan shall govern.

## III. Leases.

The Manager shall have full decision-making authority with respect to the Firm's leases of real and personal property. It is anticipated that the Firm will surrender of all Firm's leased locations to its respective landlords as soon as reasonably practicable under the circumstances. The surrender may include the Firm's personal property or fixtures located at the leased premises. It may be necessary for the Firm-in-Dissolution to obtain such space as is reasonably necessary for use by the Liquidation Team, and the Manager is expressly authorized to make decisions with regard to the Firm's leases and future needs for physical locations.

## IV. Personnel Issues

1. **Reduction In Force**. The Firm believes that a limited number of employees may be required to implement the Plan. The Manager will have authority to hire, retain and terminate employees or independent contractors as the Manager deems appropriate. The Firm-in-Dissolution will pay all amounts owed to employees in accordance with applicable law, including accrued and unused vacation time. The Manager has the authority to modify or amend the frequency and timing of any employee pay schedule. Nothing in this Plan shall be construed as an undertaking or obligation to pay any amount to any employee except as required by law. To the extent the Firm-in-Dissolution retains individuals as employees, the Firm-in-Dissolution will be responsible for making appropriate withholdings. To the extent the Firm-in-Dissolution retains individuals in any other capacity, including but not limited to, independent contractors, such retained individuals shall be responsible for all withholdings, taxes, and related payments due to any governmental unit or regulatory authority arising from or related to such retention.

2. **Departure of Shareholders**. It is anticipated that shareholders will depart from the Firm following the Effective Date. Such departing shareholder should provide written notice to the Manager and Dissolution Committee specifying the departure date. In order to facilitate an orderly transition, Shareholders shall use reasonable good faith efforts (but shall not be required) to provide at least five (5) business days' notice of the intended departure date. As soon as reasonably practicable following their respective departure dates, shareholder should complete the following: (i) submit invoices for billable matters through the last day of the calendar month prior to the departure date; (ii) record and post all billable time on all client matters through the departure date; (iii) report to the Manager the status of collection efforts on all outstanding accounts receivable as of the departure date for matters on which such departing shareholder is primarily

4

responsible; and (iv) provide the Manager a comprehensive list of all matters under his or her supervision and control, including matters not being taken with such shareholder to his or her new law firm. The Manager may establish other procedures relating to departure to protect the Firm's interests. Shareholders are encouraged to help find employment for associates and staff in connection with their new relocation and should keep the Manager informed of their progress.

3. **Shareholder Compensation**. Shareholders remaining on the Firm's premises after the Effective Date, and actively engaged in performing and supervising necessary billable client work (or providing services at the request of the Manager) will be compensated, on a weekly or bi-weekly basis in arrears based on Manager's consideration of the following factors: (i) the amount of such work warrants such compensation, (ii) that their clients are billed currently, (iii) that their time charges are being submitted currently for entry into the Firm's computer system, and (iv) that they are actively transitioning client matters to other law firms and/or pursuing the collection of accounts receivable. Any shareholder desiring to remain in the Firm under the terms of this paragraph beyond the December 31, 2022, shall require the approval of the Manager. The Manager shall have the sole and absolute authority to determine whether a shareholder is entitled to compensation under the terms of this paragraph and, if so, to what extent.

4. **KERP / KEIP**. The Manager is authorized, but not required, to implement a key employee retention plan (the "KERP") or key employee incentive plan ("KEIP") in order to retain the assistance of personnel who are necessary for the orderly implementation of this Plan. The Manager may determine the amount and terms of, and may amend or modify, the KERP or KEIP, including to increase or decrease the financial obligations of the Firm under the KERP or KEIP.

## V. Hard Asset Disposition

The Manager is authorized, but not directed, to retain appraisers to inventory and appraise the Firm-in-Dissolution's furniture, fixtures, equipment and libraries. For the avoidance of doubt, the Manager shall have authority to make all decisions regarding the liquidation of such assets, with the goal of maximizing the value of such assets under the circumstances.

## VI. Insurance

The Manager and Dissolution Committee shall have authority to continue existing insurance or purchase additional insurance on such terms as they determine to be reasonable and appropriate, taking into account the available funds of the Firm-in-Dissolution. The Dissolution Committee may also place funds in escrow or make other arrangements to provide for the payment of any deductible amounts for any claims or threatened claims under the Firm's insurance, including but not limited to, professional liability insurance, taking into account the available funds of the Firm-in-Dissolution.

## VII. Analysis, Liquidation, and Disposition of Liabilities

1. **Analysis of Known Liabilities.** The Liquidation Team will engage in a process of identifying and reviewing all of the Firm's known liabilities. The Manager shall have the authority to compromise or settle any claim or lawsuit against the Firm or owned by the Firm, and may seek Dissolution Committee approval in doing so. Shareholders or former shareholders of the Firm shall

Case: 23-40134   Doc# 3-1   Filed: 02/03/23   Entered: 02/03/23 15:05:40   Page 6 of 11

cooperate with counsel for the Firm with respect to any claim or lawsuit brought or to be brought against or on behalf of the Firm.

2. **Return of Capital / Buyback of Former Shareholder Equity.** There will be no return of capital to any current or former shareholder or payments to purchase the Firm's stock from former shareholders until such time as all of the legal obligations of the Firm-in-Dissolution to third party creditors are satisfied. Except as set forth in the preceding sentence, shareholders may pursue claims for compensation for services rendered prior to their departure or other expenses or contractual rights arising from or related to their employment. For purposes of distributions arising from or related to a shareholder of former shareholder's current or former ownership in the Firm, all current or former shareholders shall be treated equally (based on their respective ownership interests in the Firm) without regard to their date of departure. It is anticipated that issues regarding distributions to former shareholders will be determined in the Bankruptcy Case and nothing herein shall be interpreted to limit or modify the Bankruptcy Court's ability to determine such issues.

## VIII. Other Matters

1. **Professional Responsibility Issues**. Each shareholder remains responsible to ensure that all professional obligations to clients for whom he or she has been or is performing professional services are being satisfied appropriately.

2. **Liquidation Expenses**. The costs and expenses of carrying out the Plan will be incurred on behalf of and borne by the Firm-in-Dissolution. Such costs and expenses may include, without limitation, (i) fees and expenses of the Consultants; (ii) compensation, benefits and expenses of the Manager, Liquidation Team, and members of the Dissolution Committee; (iii) costs of compliance with legal requirements relating to the liquidation; (iv) payments of insurance premiums for necessary coverages and deductibles for professional liability claims relating to claims for work performed by the Firm.

## IX. Payments to Creditors

The Manager and the Dissolution Committee have the authority to provide to creditors such financial information as they may reasonably request and to disburse payments to such creditors in satisfaction of the obligations of the Firm-in-Dissolution to such creditors.

## X. Indemnification

A. **Limitation of Liability of the Liquidation Team**. To fullest extent permissible under applicable law, the Manager, the members of the Dissolution Committee and the other members of the Liquidation Team shall have no personal liability to the Firm-in-Dissolution or the shareholders for monetary damages for breach of his or their duties in such capacities, notwithstanding any provision of law imposing such liability, so long as he, she, or they acted in a manner that did not constitute bad faith or willful misconduct.

B. **Indemnification**. The Firm-in-Dissolution shall indemnify the Manager, the members of the Dissolution Committee and the other members of the Liquidation

6

Team to the extent and in the manner provided in **_Exhibit A_** attached hereto. The Dissolution Committee is authorized in its discretion to establish an escrow fund in such amount as it deems reasonable to cover the costs of defense as well as the potential liabilities of any claim that has been brought or may be brought against any of the Indemnitees (as defined herein) for which such Indemnitees may be entitled to indemnification hereunder. In addition to, and not in limitation of the rights of the Indemnitees to be indemnified by the Firm-in-Dissolution, the Dissolution Committee may cause the Firm-in-Dissolution to obtain and pay for insurance coverage for any acts or omissions in connection with the performance of their duties under the Plan.

*[Reminder of page intentionally blank.]*

**EXHIBIT A**

**INDEMNIFICATION**

### 1. Scope of Indemnification

(a) **Third-Party Proceedings**. To the fullest extent permitted by applicable law, the Firm-in-Dissolution shall indemnify the Manager, each member of the Dissolution Committee and the other members of the Liquidation Team and each person acting on behalf of the Firm-in-Dissolution at the request of and on the authority of the foregoing (each an "Indemnitee") if Indemnitee is or was a party to or participant in, or is threatened to be made a party to or participant in, any threatened, pending or completed action, arbitration, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Firm-in-Dissolution) (a) by reason of the fact that Indemnitee is or was serving in such capacity under the Plan, or (b) by reason of any action or inaction, or alleged action or inaction, while acting in such capacity under the Plan, against all expenses (including without limitation attorneys' fees and all other costs, expenses and obligations incurred in connection with investigating, defending, being a witness in, or participating in (including on appeal), or preparing to defend, be a witness in or participate in, any action, arbitration, suit, proceeding, alternative dispute resolution mechanism, hearing, inquiry or investigation), damages, losses, costs, judgments, fines and amounts paid in settlement (if such settlement is approved by the Firm-in-Dissolution, which approval shall not be unreasonably withheld or delayed) actually and reasonably incurred by Indemnitee in connection with such action, arbitration, suit or proceeding ("Indemnifiable Expenses") so long as indemnitee acted in a manner that did not constitute bad faith or willful misconduct, and, with respect to any criminal action or proceeding, so long as indemnitee believed in good faith that indemnitee's conduct was lawful. The termination of any action, arbitration, suit or proceeding by judgment, order, settlement, collection, or upon a plea of nolo contendere or its equivalent, shall not, of itself create presumption that indemnitee acted in a manner that constituted bad faith or willful misconduct, or, with respect to any crimination action or proceeding, that Indemnitee did not believe in good faith that Indemnitee's conduct was lawful. In the event of any dispute regarding whether the Indemnitee is entitled to indemnification hereunder, the party opposing the Indemnitee's claim for indemnification shall have the burden of establishing that the indemnitee acted in a manner that constituted bad faith or willful misconduct and, with respect to any criminal action or proceeding, that the Indemnitee did not believe in good faith that Indemnitee's conduct was lawful.

(b) **Proceedings By or in the Right of the Firm-in-Dissolution**. To the fullest extent permitted by applicable law, the Firm-in-Dissolution shall indemnify Indemnitee if indemnitee was or is a party to or participant in, or is threatened to be made a party to or participant in, any threatened, pending or completed action, arbitration or proceeding by or in the right of the Firm-in-Dissolution to procure a judgment in its favor (a) by reason of the fact that Indemnitee is or was serving in such capacity under the Plan, or (b) by reason of any action or inaction, or alleged action or inaction, on the part of Indemnitee while acting in such capacity under the Plan, against all Indemnifiable Expenses if Indemnitee acted in a manner that did not constitute bad faith or willful misconduct. In the event of any dispute regarding whether the Indemnitee is entitled to indemnification hereunder, the party opposing the indemnitee's claim for indemnification shall

8

Case: 23-40134   Doc# 3-1   Filed: 02/03/23   Entered: 02/03/23 15:05:40   Page 9 of 11

have the burden of establishing that the indemnitee acted in a manner that constituted bad faith or willful misconduct, If indemnitee shall have been finally adjudicated by court or arbitration order or judgment to be liable to the Firm-in-Dissolution in respect of any claim, issue or matter, in the performance of Indemnitee's duty to the Firm-in-Dissolution, Indemnitee shall nonetheless be entitled to indemnification hereunder unless and only to the extent that the court or arbitration panel in which such action or proceeding is or was pending shall determine that, in view of all the circumstances of the case, Indemnitee is not entitled to indemnity for Indemnifiable Expenses hereunder.

### 2. Expenses; Indemnification Procedure.

(a) **Advancement of Expenses**. The Firm-in-Dissolution shall advance all Indemnifiable Expenses incurred by Indemnitee from time to time upon request prior to the time required for payment. Indemnitee hereby undertakes to repay such amounts advanced only if and to the extent that, it shall ultimately and finally be determined by court or arbitration order or judgment from which no further right of appeal exists that Indemnitee is not entitled to be indemnified by the Firm-in-Dissolution as authorized hereby.

(b) **Notice/Cooperation by Indemnitee**. Indemnitee shall, as a condition precedent to his or her right to be indemnified under the Plan, give the Firm-in-Dissolution notice in writing as soon as practicable of any claim made against Indemnitee for which indemnification will or could be sought hereunder. Notice to the Firm-in- Dissolution shall be directed to the Dissolution Committee. In addition, Indemnitee shall give the Firm-in-Dissolution such information and cooperation as it may reasonably require and as shall be within Indemnitee's power. Failure to give notice shall not relieve the Firm-in-Dissolution of its obligation hereunder except to the extent the Firm-in-Dissolution is materially prejudiced thereby.

(c) **Procedure**. Any indemnification and advances provided for in Section 1 and Section 2 of this "Indemnification" section shall be made no later than 10 days after receipt of the written request of Indemnitee. If a claim under the Plan, this section, or under any statute is not paid in full by the Firm-in-Dissolution within 10 days after a written request for payment thereof, Indemnitee may, but need not, at any time thereafter bring an arbitration action against the Firm-in-Dissolution to recover the unpaid amount of the claim and Indemnitee shall also be entitled to be paid for the expenses (including attorneys' fees) of bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in connection with any action, suit or proceeding in advance of its final disposition) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Firm-in-Dissolution to indemnify Indemnitee for the amount claimed, but the burden of proving such defense shall be on the Firm-in-Dissolution and Indemnitee shall be entitled to receive interim payments of expenses pursuant to Section 2(a) of this section unless and until such defense may be finally adjudicated by court or arbitration order or judgment from which no further right of appeal exists. It is the parties' intention that if the Firm-in-Dissolution contests Indemnitee's right to indemnification, the question of Indemnitee's right to indemnification shall be for the arbitration panel to decide, and neither the failure of the Firm-in-Dissolution to have made a determination that indemnification of Indemnitee is proper in the circumstances, nor an actual determination by the Firm-in-Dissolution that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has or has not met the applicable standard of conduct.

9

(d)  **<u>Obligation of the Firm-in-Dissolution</u>**.  For the avoidance of doubt, the indemnification obligations set forth in this section titled "Indemnification" are the obligations of the Firm-in-Dissolution and not of the shareholders, individually or collectively.

Case: 23-40134   Doc# 3-1   Filed: 02/03/23   Entered: 02/03/23 15:05:40   Page 11 of
11