Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11    02/20

**Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc.'s Plan of Reorganization, Dated May 4, 2023.**

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

1. The Debtor is a California corporation. Since 1950, the Debtor has been operating as a law firm providing services in a variety of practice areas, with a primary focus on the representation of insurance companies and insureds in litigation matters. Over the following decades, the Debtor prospered and expanded into additional California markets—opening offices in San Francisco in 1967, Sacramento in 1970, Fresno in 1974, San Jose and Los Angeles in 1983, Walnut Creek in 2000, and Bakersfield in 2021. Ultimately, the Debtor grew into a law firm with more than 40 attorneys throughout the State of California. It ceased providing legal services effective December 31, 2022

2. In the last few years, the Debtor's profitability decreased due to various factors, including (i) stagnant or decreased market rates for the representation of insurance companies and insureds in litigation matters, (ii) the COVID-19 pandemic slowing or stalling litigation and imposing general restrictions on business operations, and (iii) increased overhead and employee costs. The Debtor's financial difficulties were exacerbated by shareholder departures, including the departure of substantially all partners, associates, and staff from the Debtor's Fresno, Bakersfield, and Sacramento offices in 2022. The significant shareholder departures triggered a rapid decline in the Debtor's operations, operational capabilities, and revenues, which caused a corresponding reduction in profitability and shareholder distributions—leading to additional shareholder departures and a deepening and acceleration of the Debtor's financial decline.

3. Ultimately, after retaining and consulting with restructuring professionals and considering several options, the Debtor decided it was in the best interests of creditors, equity interest holders, and other parties in interest for the Debtor to wind down its business. Effective as of December 9, 2022, the Debtor adopted a Plan of Dissolution, which commenced the Debtor's dissolution, appointed a Dissolution Committee to oversee the orderly wind down of the Debtor, and authorizing the filing of this Chapter 11 Case. A copy of the Plan of Dissolution is attached to the *Declaration of Kyle Everett in Support of Chapter 11 Petition and First Day Motions* [Docket No. 3] as Exhibit A. *See* footnote 1.

4. On February 3, 2023, Ericksen filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code—thereby commencing this bankruptcy case. Mr. Mark Sharf was appointed a Subchapter V Trustee in this case.

5. The Debtor filed this case in an effort to (i) preserve and maintain assets of the law firm, while safeguarding client funds and records pending return or transfer of the same to new counsel, (ii) complete an orderly wind down of the law firm's operations, (iii) surrender leased premises, (iv) administer all estate assets, (iv) distribute the proceeds by and through a Bankruptcy Court confirmed Plan. As of the Petition Date, the Debtor's assets consisted principally of (i) approximately $1.399 million in cash; (ii) accounts receivable and work in process with a face amount of approximately $3 million; and (iii) various office fixtures, furniture, and equipment. Although not part of the Debtor's bankruptcy estate, the Debtor was also in possession of approximately $363,000 held in a trust account on behalf of its former clients.

---

1 Copies of all documents filed with the Bankruptcy Court and all proofs of claims submitted to the Bankruptcy Court are available for free at https://cases.creditorinfo.com/ericksen.

6.  On the Petition Date, the Debtor filed several "first day" motions with the Bankruptcy Court seeking relief designed to facilitate an orderly transition for the Debtor into Chapter 11.   Following a hearing, the Bankruptcy Court entered the following orders:

> *Interim Order Granting Motion for Authority to (A) Pay Prepetition Wages, Benefits, and Employee Business Expenses; and (B) Continue the Postpetition Maintenance of Employee Benefit Programs, Policies, and Procedures in the Ordinary Court* (Doc. No. 42); *Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral* (Doc. No. 47).

7.  The Debtor also sought and obtained Bankruptcy Court approval to employ professionals and interim management to assist with this Chapter 11 case. Specifically, the Bankruptcy Court has approved the Debtor's retention of the following: (i) Baker & Hostetler LLP as its legal counsel (Doc. No. 88); (ii) Development Specialists Inc. as manager of the firm in dissolution and to provide support personnel (order pending), and (iii) BMC Group, Inc. as noticing agent (Doc. No. 60).

8.  The Debtor has also rejected a number of leases of non-residential real property under Section 365 of the Bankruptcy Code. On February 3, 2023, the Debtor filed *Debtor's Motion for Entry of an Order (1) Authorizing the Rejection of Certain Unexpired Leases of Nonresidential Real Properties and (2) Authorizing the Abandonment of Personal Property* (Doc. No. 9), seeking authority to reject the Debtors leases for its leased offices in the cities of Concord, Sacramento, Los Angeles, and San Jose. On March 24, 2023, the Bankruptcy Court entered its *Order (1) Authorizing the Rejection of Certain Unexpired Leases of Nonresidential Real Properties and (2) Authorizing the Abandonment of Personal Property* (Doc. No. 75), which granted the Debtor's motion to reject and incorporated consensual resolutions of certain contested issues raised by certain of the Debtor's landlords.

9.  Since the Petition Date, the Debtor has continued efforts to maximize the value of its assets for all stakeholders for distribution pursuant to this Plan. This has included, among other things, (i) finalizing billings, (ii) transferring matters and files to new counsel, (iii) collecting accounts receivable, (iv) winding down operations, and (iv) appropriately storing and handling client information.

10. The Debtor's Schedules and Statement of Financial Affairs (Docket Nos. 48, 50, 87) reflect approximately $1,346,610.17 in liabilities, comprised entirely of priority unsecured and general unsecured claims. The Debtor scheduled one Secured Claim – a line of credit with Bank of the West; however, as of the Petition Date, that line of credit had a balance of approximately $0.00. The Claims Bar Date was April 14, 2023. Taking into account creditor claims scheduled by the Debtor and proofs of claim timely filed against the Debtor, the following approximate claims are pending against the Debtor:

> Secured Claims: $8,087.02 (*See* footnote 2)
>
> Priority Tax Claims: $135,672.56
>
> Priority Non-Tax Claims: $464,857.65
>
> General Unsecured Claims: Approximately $4.5 million

11. As of April 30, 2023, the Debtor had approximately $2.65 million in cash on hand, accounts receivables of approximately $1.25 million, and an unknown amount of other assets.

12. On May 4, 2023, the Debtor filed this Plan with the Bankruptcy Court. Going forward, the Debtor intends to file a *Motion for Approval of Client File Disposition Procedures* seeking Bankruptcy Court approval of a process for notifying former clients of their options with respect to any files held by the Debtor and authorizing the Debtor to confidentially dispose of certain files. The Debtor intends to schedule an initial hearing on that motion for May 31, 2023.

## B. Liquidation Analysis

1.  To confirm the Plan, the Court must find that all Creditors and Equity Security Holders who do not accept the Plan will receive at least as much under the Plan as such Creditors and Equity Security Holders would receive in a chapter 7 liquidation. The liquidation analysis is attached

---

2 Pursuant to a stipulation with one of the Debtor's creditors, a filed proof of claim was withdrawn. The amounts included in the proof of claim have been removed from these estimations. (See Docket No. 92)

hereto as **Exhibit A.**

2.  As demonstrated by the Liquidation Analysis, the Debtor believes that Creditors and Equity Security Holders will receive significantly more under the Plan than such Creditors and Equity Security Holders would receive if the Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code and the remaining assets of the Debtor administered by a chapter 7 trustee.

## C. Ability to make future plan payments and operate without further reorganization

1.  The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. This Plan proposes the liquidation of all of the Debtor's assets to pay creditors and equity security holders. Plan distributions will be funded using the Debtor's cash on hand as of the Effective Date and net proceeds from the collection of all other assets of the bankruptcy estate. The Debtor's projected financial information is attached hereto as **Exhibit B.**

2.  The Debtor's financial projections show that the Debtor will have sufficient cash to pay all payments required on the Effective Date, with the ultimate amount and timing of distributions to Creditors and Equity Security Holders to be determined at a future date based on the Debtor's ability to monetize its remaining assets (primarily accounts receivables) and the resolution of any objections to claims or requests to subordinate claims, and it is unknown how long those activities will take.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc. (the *Debtor*) from cash on hand as of the Effective Date of the Plan and net proceeds from the collection of all other assets of the bankruptcy estate, including but not limited to accounts receivable, Causes of Action, tax refunds, deposits, or other funds recoverable by the Debtor or Estate.

This Plan provides for:   **1**   class of priority claims;

   **3**   classes of secured claims;

   **2**   classes of non-priority unsecured claims; and

   **1**   class of equity security holders and claims subordinated under Section 510(b)(if any)

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **40-100** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All Creditors and Equity Security Holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| 2.01 | **Class 1**........................ | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2)) and priority tax claims under § 507(a)(8)). |
| --- | --- | --- |
| 2.02 | **Class 2**........................ | Secured Claims to the extent allowed as a secured claim under § 506 of the Code. |
| | | Class 2A: Bank of the West Secured Claim |
| | | Class 2B: Corodata Records Management Inc. Secured Claim |
| | | Class 2C: Iron Mountain Information Management LLC Secured Claim |
| 2.03 | **Class 3**........................ | All non-priority unsecured claims allowed under § 502 of the Code. |
| | | Class 3A: General Unsecured Claims |
| | | Class 3B: Safe Harbor Nonelective Contribution Claim |
| 2.04 | **Class 4**........................ | Equity interests of the Debtor. |
| | | Class 4: Equity Securities and Subordinated 510(b) Claims |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. |
| --- | --- | --- |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in Cash (a) on the Effective Date if the Claim is then an Allowed Claim; (b) as soon as reasonably practicable after entry of an order Allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; or (c) upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Applications for allowance of administrative claims, including Professional Fee Claims, shall be filed within thirty (30) days of the Effective Date.<br><br>The Debtor estimates Professional Fee Claims, net of any retainers, of approximately $250,000-400,000 will be paid under the Plan.<br><br>Notwithstanding the foregoing, all administrative claims incurred by the Debtor's suppliers, employees, and trade creditors shall be paid in full in the ordinary course of the Debtor's business. Holders of ordinary course administrative expense claims are not required to seek allowance of such claims. |

**3.03** **Priority tax claims**

Each holder of a priority tax claim will be paid in full on the Effective Date of the Plan, or as soon thereafter as is practicable, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

There is one pending Priority Tax Claim against the Debtor, filed by the IRS in the amount of $135,672.56. Upon information and belief, this amount is a placeholder based on the Debtor's tax liabilities for previous years and the amounts owed to the IRS (if any) will not be known until the Debtor files future tax returns, however, a liability of this magnitude is highly unlikely as the Debtor's preliminary tax analysis indicates that it has a loss of approximately $1 million for its most recent unfiled prepetition tax period.

**3.04** **Statutory fees**

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date.

**3.05** **Subchapter V Trustee Fees**

All fees of the Subchapter V Trustee allowed by the Court will be paid in full in cash: (a) on the Effective Date if then allowed; (b) as soon as reasonably practicable after entry of an order allowing the fees, if not allowed as of the Effective Date; or (c) upon such other terms as may be agreed upon by the Debtor and the Subchapter V Trustee. Applications for allowance of Subchapter V Professional Fees shall be filed within 30 days of the Effective Date.

The Debtor estimates that Subchapter V Trustee's Fees of $25,000 or less will be paid under the Plan.

All post-confirmation fees of the Subchapter V Trustee allowed by the Court will be paid in full in cash as soon as reasonably practicable after entry of an order allowing the fees.

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01** **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>X☐ Unimpaired | Class 1 consists of Allowed Priority Claims. Class 1 is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 1 shall receive: (i) Cash in an amount equal to such Allowed Priority Claim on the Effective Date, or as soon thereafter as is reasonable practicable, or if disputed, as provided elsewhere in the Plan; or (ii) such other treatment to which the Debtor and the holder of the Allowed Priority Claim may agree. Allowed Class 1 Claims are Unimpaired, and as such, are not entitled to vote on the Plan.<br><br>The Debtor anticipates that the priority portion of the Safe Harbor Nonelective Contribution Claim will be the only Priority Claim. To the extent any portion of the Safe Harbor Nonelective Contribution Claim is not deemed to be a Priority Claim, it shall constitute an Allowed Class 3B Claim. |

The Safe Harbor Nonelective Contribution Claim is the amount due from

Case: 23-40134   Doc# 107   Filed: 05/04/23   Entered: 05/04/23 15:55:55   Page 5 of 21

the Debtor, acting as a fiduciary, to the Ericksen et al Inc. 401(k) Savings Plan, the failure to pay timely which may lead to (i) the inability of the Debtor to deduct the payments on its tax return, (ii) the triggering of various tax compliance testing processes for which the Debtor would need to retain tax advisors, (iii) an audit by the IRS for which the Debtor would need to retain tax advisors, (iv) ultimately, if certain conditions are met, the disqualification of the 401(K) Savings Plan, which could result in all funds in such plan being treated as immediately taxable to all participants, including many of the Debtor's former employees, and require the Debtor to retain tax advisors to advise on the effects of same and whether the Debtor's tax returns would need to be amended or modified for previous years and the effects on same on the Debtor's former employees; and (v) the IRS having substantial priority tax claims against the Debtor that could significantly reduce or eliminate certain other payments contemplated by the Plan.

| Class 2A – **Secured claim of Bank of the West** | ☐ Impaired<br>☒ Unimpaired | Class 2A consists of the Claim of Bank of the West, to the extent allowed as a Secured Claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Allowed Class 2A Claims are Unimpaired, and as such, are not entitled to vote on the Plan.<br><br>The Debtor anticipates Allowed Class 2A Claims to be $0 -$1,000. |
|---|---|---|
| Class 2B – **Secured claim of Corodata Records Management Inc.** | ☐ Impaired<br>☒ Unimpaired | Class 2B consists of the Claim of Corodata Records, to the extent allowed as a secured claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Allowed Class 2B Claims are Unimpaired, and as such, are not entitled to vote on the Plan.<br><br>The Debtor anticipates Allowed Class 2B Claims to be approximately $6,303.76. |
| Class 2C – **Secured claim of Iron Mountain Information Management, LLC** | ☐ Impaired<br>☒ Unimpaired | Class 2C consists of the Claim of Iron Mountain, to the extent allowed as a secured claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Class 2C Claims are Unimpaired, and as such, are not entitled to vote on the Plan. |

The Debtor anticipates Allowed Class 2C Claims to be approximately $3,176.62.

| **Class 3A – General Unsecured Creditors** | X☐ Impaired ☐ Unimpaired | Class 3A consists of Allowed General Unsecured Claims. In full satisfaction of Allowed Claims in Class 2C, each holder of an Allowed Claim in Class 3A shall receive its pro rata share of the Class 3A Distributions until each Holder has received the Allowed amount of such Holder's Class 3A Claim, with all incurred interest from the Petition Date through the date such Claims are paid in full. Interest shall accrue at the prevailing federal judgement rate of interest. Class 3A Claims are Impaired, and as such, are entitled to vote on the Plan. |
| --- | --- | --- |
| | | The Debtor estimates the amount of General Unsecured Claims pending against the Debtor is approximately $1.9 million, exclusive of the Repurchase Claims, and approximately $4.5 million, inclusive of the Repurchase Claims (both amounts are prior to any claims objections or requests to subordinate claims) |
| **Class 3B – Safe Harbor Nonelective Contribution Claims** | ☐ Impaired X☐ Unimpaired | Class 3B consists of the Allowed Safe Harbor Nonelective Contribution Claims. The Safe Harbor Nonelective Contribution Claim shall be deemed Allowed in the amount of $288,792.33 less any amounts included as Allowed Class 1 Claims. Class 3B is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 3B shall receive: (i) Cash in an amount equal to such Allowed Class 3B Claim on the Effective Date, or as soon thereafter as is reasonably practicable; or (ii) such other treatment to which the Debtor and the holder of the Allowed Class 3B Claim may agree. Class 3B Claims are Unimpaired, and as such, are not entitled to vote on the Plan. |
| | | The Debtor anticipates Allowed Class 3B Claims to be the Safe Harbor Nonelective Contribution claim of $288,792.33, less any amounts of such claim treated as an Allowed Class 1 Claim. |
| Class 4 - **Equity Securities and Subordinated 510(b) Claims** | X☐ Impaired ☐ Unimpaired | Class 4 consists of (i) Allowed Equity Security Interests, and (ii) Allowed Subordinated 510(b) Claims. In full satisfaction of Allowed Claims in Class 4, each holder of an Allowed Claim in Class 4 shall receive distributions from the Liquidating Debtor in accordance with their respective percentage Interests in the Debtor after payment in full of all unclassified and classified claims and after taking into account |

any amounts paid by the Debtor on account of such Equity Security Interests. Class 4 Claims are Impaired, and as such, are entitled to vote on the Plan.

The Debtor notes that Repurchase Claims of approximately $2.5 million were filed against the Debtor as general unsecured or priority claims, and the Debtor plans to file a motion or adversary proceeding asking the Bankruptcy Court to determine whether such claims should be subordinated under Section 510(b) of the Bankruptcy Code. To the extent the Repurchase Claims are subordinated, they shall be Class 4 Claims. To the extent the Repurchase Claims are not subordinated, they shall be Class 3A Claims.

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed Claim**

A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection or sought subordination of such claim; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**5.03 Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure; provided however, that the Liquidating Debtor may, without further approval of the Bankruptcy Court or compliance with Bankruptcy Rule 9019, settle and compromise a Disputed Claim or Equity Security Interest if the Claim or Equity Security Interest, as settled and compromised, is Allowed in an amount less than $25,000.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

**6.01 Assumed executory contracts and unexpired leases**

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None; unless otherwise designated in writing filed with the Bankruptcy Court prior to the Effective Date.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **30** days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

7.01           <u>In General.</u> On the Effective Date, the Debtor shall become a Liquidating Debtor subject to the terms of the Plan and shall function solely to liquidate and administer the assets of the Debtor and bankruptcy estate for the benefit of creditors and interest holders. The Liquidating Debtor is authorized to take any and all actions that may be necessary or appropriate to implement the Plan. *See* Article 10 for further provisions regarding the post-Effective Date operations of the Liquidating Debtor.

■ **Article 8:** **General Provisions**

**Definitions and rules**
8.01 **of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1. "**Administrative Expense Claim**" means Claims that have been timely filed, or late filed Claims otherwise allowed by Final Order, for costs and expenses of administration under Sections 503(b), 507(a)(2) or 1114(e)(2), including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor; (b) administrative expense claims Allowed under Section 503(b)(9) (if any); and (c) Professional Fee Claims.

2. "**Allowed**" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court,); (b) any Claim which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Debtor under the Plan; *provided* that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or through an agreement between the claimant and the Liquidating Debtor. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

3. "**Assets**" means all tangible and intangible assets of every kind and nature of the Debtor and its Estate within the meaning of Section 541.

4. "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estate under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

5. "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time. Unless otherwise noted, all references to "Section _____" refer to the specified section of the Bankruptcy Code.

6. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of California, Oakland Division.

7. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

8. "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in Oakland, California are required or authorized to close by law or executive order.

9. "**Cash**" means legal tender of the United States of America.

**8.01** **Definitions and rules of construction**

10. "**Causes of Action**" means all claims, actions (including the Avoidance Actions), causes of action (including commercial tort claims), choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of Debtor and/or Estate against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

11. "**Chapter 11 Case**" means the Debtor's bankruptcy case commenced by the filing of a voluntary petition for relief for the Debtor on the Petition Date, under chapter 11 the Bankruptcy Code, Case No. 23-40134-WJL, currently pending in the Bankruptcy Court.

12. "**Claim**" has the meaning set forth in section 101(5).

13. "**Claimant**" means the Holder of a Claim.

14. "**Claims Bar Date**" means April 14, 2023, the deadline for filing proofs of claim in the Chapter 11 Case.

15. "**Claims Objection Deadline**" means the date that is one hundred and twenty (120) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion.

16. "**Class**" means any group of substantially similar Claims or Equity Security Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1).

17. "**Class [ ] Claimants**" refers to the Claimants holding Claims in the specified Class.

18. "**Class 3A Distribution**" means the Assets of the Debtor and/or Estate distributable to Class 3A Claimants under the Plan, which is comprised of the Assets of the Debtor and/or Estate remaining after the payment and satisfaction, as provided in the Plan, of the Unclassified Claims, Claims in Classes 1, 2, and 3B and fees and costs associated with the administration of the Liquidating Debtor Assets; *provide* that if the Liquidating Debtor Assets are insufficient to pay all Class 3A Claimants in full, Class 3A Claimants shall share *pro rata* in any Distributions to Holders of Claims in Class 3A.

19. "**Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming the Plan, which order shall be in form and substance acceptable to the Debtor.

20. "**Debtor**" means Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc., as debtor-in-possession in the Chapter 11 Case.

21. "**Disputed Claim**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part or is subject to request to subordinate such claim prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order or compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Debtor under the Plan.

Case: 23-40134    Doc# 107    Filed: 05/04/23    Entered: 05/04/23 15:55:55    Page 11 of
21

**8.01    Definitions and rules of construction**

22.   "**Dissolution Committee**" means the committee formed pursuant to the Plan of Dissolution adopted by the Debtor prior to the Petition Date to manage the winddown of the Debtor.

23.   "**Distribution**" means any distribution to Holders of Allowed Claims or Equity Security, or their designated agents, under or pursuant to this Plan.

24.   "**Effective Date**" means the date on which the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the terms hereof. The Debtor shall file a Notice of Effective Date indicating the calendar date which corresponds to the Effective Date.

25.   "**Equity Security**" and "**Equity Interest**" means any equity, membership, or other ownership interest in the Debtor.

26.   "**Estate**" means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to Section 541 and 1186.

27.   "**Final Order**" means an Order of the Bankruptcy Court, or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for *certiorari*, or to move for reargument or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending; *provided, however,* that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

28.   "**General Unsecured Claim**" means any Claim against the Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Safe Harbor Nonelective Contribution Claim, Secured Claim, Equity Interest, or Subordinated Claim, but includes (a) any Rejection Damages Claim(s) under Section 365 and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a), or (ii) otherwise determined by the Bankruptcy Court to be a nonpriority unsecured Claim.   General Unsecured Claims are classified in Class 3A of the Plan.

29.   "**Holder**" means the legal or beneficial holder of any Claim or Equity Security.

30.   "**Impaired**" means, when used with reference to a Claim or Equity Security, a Claim or Equity Security that is impaired within the meaning of Section 1124.

31.   "**Iron Mountain**" means Iron Mountain Information Management, LLC, Holder of a Claim in Class 2C of the Plan.

**32.**   "**Late-Filed Proofs of Claim**" means any Proofs of Claim filed after the Claims Bar Date

33.   "**Liquidating Debtor**" means the reorganized debtor that will come into existence upon the Effective Date which will manage property of the estate as set forth herein (to the extent the Plan is confirmed non-consensually), or into which the Debtor's Assets will vest on the Effective Date (if the Plan is confirmed consensually).

Case: 23-40134    Doc# 107    Filed: 05/04/23    Entered: 05/04/23 15:55:55    Page 12 of
21

8.01    **Definitions and rules of construction**

34.    "**Liquidating Debtor Assets**" shall mean all of the Debtor's Assets as of the Effective Date.

35.    "**Liquidation Analysis**" refers to the computation of projected Distributions under the Plan and a hypothetical liquidation under chapter 7 of the Bankruptcy Code, which is attached to the Plan as **Exhibit A**.

36.    "**Manager**" means the Person(s) appointed to manage the Liquidating Debtor pursuant to and in accordance with the Plan and any other agreements pertaining to the engagement of such Person(s), which shall be Mr. Kyle Everett of Development Specialists, Inc.

37.    "**Net Operating Losses**" or "**NOLs**" means any net operating losses owned by the Debtor.

38.    "**Notice of Effective Date**" means a notice to be filed with the Bankruptcy Court by the Debtor upon the satisfaction or waiver of all the conditions to the Effective Date.

39.    "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the docket in the Chapter 11 Case.

40.    "**Plan**" means the Debtor's *Plan of Reorganization for Small Business under Chapter 11* dated as of May 4, 2023, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof.

41.    "**Petition Date**" means February 3, 2023, the date on which the Debtor commenced the Chapter 11 Case.

42.    "**Preserved Claims and Causes of Action**" means all of the Debtor's Claims and Causes of Action, which shall be preserved and vest in the Liquidating Debtor under the Plan. The Preserved Claims and Causes of Action include, but are not limited to, (i) Claims or Causes of Action to avoid and recover preferential transfers pursuant to Section 547 and other avoidance actions under Chapter 5 of the Bankruptcy Code (i.e., the Avoidance Actions), (ii) Claims or Causes of Action against present and former shareholders, officers, directors, affiliates and other insiders of the Debtors, and (iii) any other Cause of Action.

43.    "**Priority Claim**" means unsecured Claims accorded priority in right of payment under Section 507(a), other than Administrative Expense Claims or Priority Tax Claims, and classified in Class 1 of the Plan.

44.    "**Priority Tax Claim**" means an unsecured Claim, or a portion thereof, that is entitled to priority under Sections 502(i) or 507(a)(8).

45.    "**Professional**" means any professional person employed by the Debtor in the Chapter 11 Case pursuant to Sections 327 and/or 363 or otherwise pursuant to an Order of the Bankruptcy Court.

46.    "**Professional Fee Claim**" means a Claim under Sections 328, 330(a), 331, or 503 for compensation of a Professional for services rendered to or expenses incurred for the benefit of the Debtor in the Chapter 11 Case.

**8.01    Definitions and rules of construction**

47.  "**Projections**" means the financial projects evaluating Debtor's financial ability to fund the Plan and make the Distributions required under the Plan, which are attached to the Plan as **Exhibit B**.

48.  "**Proofs of Claim**" means the timely filed proofs of claim against the Debtor and Estate pursuant to and in accordance with Section 501 and Bankruptcy Rule 3001.

49.  "**Rejection Damages Claim**" means any Claim under Section 502(g) arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to Section 365(a) by the Debtor, as limited, in the case of a rejected employment contract or unexpired lease, by Section 502(b).

50.  "**Repurchase Claim**" means Claims asserted by a current or former Equity Security Holder arising from or related to the Debtor's obligation to repurchase Equity Securities in the Debtor, including, without limitation, the Claims asserted pursuant to Proofs of Claim Nos. 11, 14, 15, 22, 23-1, 24, 25, 27-2, 28-2, 30, 31-1, 32, 39-1, and 41-1.

51.  "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtor pursuant to Section 521 and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

52.  "**Safe Harbor Nonelective Contribution Claim**" means the Safe Harbor Nonelective Contribution Claim due from the Debtor, acting as a fiduciary, to the Ericksen et al Inc. 401(k) Savings Plan as described in Section 4.01 of the Plan at Class 1.

53.  "**Secured Claims**" means Claims (or portions thereof) that are secured by a lien on property in which the Estate has an interest, which liens are valid, perfected and enforceable under applicable law.   Secured Claims are classified in Classes 2A-2C of the Plan.

54.  "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

55.  "**Subordinated Claim**" means any unsecured Claim subordinated under Section 510 or other legal or equitable principles, including, without limitation, Repurchase Claims subordinated under Section 510(b).

56.  "**U.S. Trustee**" means the Office of the United States Trustee for the Northern District of California.

| 8.02 | **Effective Date** | The Effective Date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order and the Plan shall be deemed substantially consummated on the Effective Date. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. Notwithstanding any of the foregoing, the Debtor may, in its sole and absolute discretion, in a writing filed with the Bankruptcy Court, cause the Effective Date to occur earlier than the first business day following the date that is 14 days after the entry of the confirmation order. |
|---|---|---|
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | |

A)    Liquidating Debtor.   On the Effective Date, the Debtor shall become the Liquidating Debtor. The Liquidating Debtor shall be deemed to be the successor-in-interest to the Debtor for all respects in connection with the liquidation and administration of the Liquidating Assets. All Equity Securities in the Debtor shall be cancelled effective as of the Effective Date, and the Manager shall be deemed the sole equity holder with all decision-making authority for the Liquidating Debtor for purposes of administering the Liquidating Assets under the terms of the Plan.

B)    Liquidating Assets. The Liquidating Assets shall consist of any and all Assets of the Debtor and Estate as of the Effective Date.

C)    Authority of Liquidating Debtor.   The Liquidating Debtor shall be authorized to engage in any lawful business or activity the Manager deems necessary or appropriate to the liquidation and administration of the Liquidating Assets and to represent or act as successor-in-interest to the Debtor with respect to any Assets or legal proceedings, including the Chapter 11 Case.

D)    Selection/Compensation of Liquidating Manager.   On the Effective Date, Kyle Everett of Development Specialists Inc. shall be appointed as the Manager for the Liquidating Debtor. Creditors may replace the Manager upon motion to the Bankruptcy Court demonstrating good cause to replace the Manager (e.g., actual conflicts of interest, violations of fiduciary duties, if any, self-dealing, grossly negligent or reckless conduct with respect to Liquidating Assets, and failure to perform under the terms of the Plan and Confirmation Order). Mr. Everett shall be compensated at his normal hourly rate plus the reimbursement of reasonable expenses.

E)    Directors/Officers/Members. All prepetition directors, officers, and managers, including, without limitation, the members of the Dissolution Committee, shall be deemed to have resigned upon the Effective Date; *provided*, *however*, that Mr. Everett shall be designated as Manager for the Liquidating Debtor and vested with any and all rights and authorities as may be necessary or appropriate to effectuate the Plan and to liquidate and administer the Liquidating Debtor and Liquidating Assets, including, without limitation, all corporate authority vested in corporate officers and directors under the laws of the State of California.

F)    Liquidating Professionals. The Manager, in such capacity for the Liquidating Debtor, may retain any Liquidating Professionals he or she deems necessary or appropriate to represent the Liquidating Debtor and/or assist in the liquidation and administration of the Liquidating Assets, including, without limitation, attorneys, financial advisors, brokers, mediators, etc.  Liquidating Professionals shall be compensated as administrative expense(s) of the Liquidating Debtor. Retention by the Debtor or Estate shall not prohibit any Professional from being retained or representing or serving as a Liquidating Professional. The Manager shall be entitled to rely, in good faith, on the advice of the Liquidating Professionals

G)    Distributions. The Liquidating Debtor shall make all distributions under the Plan. The timing and amount of each distribution shall be determined by the Liquidating Debtor in its sole discretion and shall be consistent with the terms set forth in the Plan and any applicable order of the Bankruptcy Court. Any Liquidating Assets available for distribution (after payments of all amounts except for Classes 3A and 4) shall be applied (a) first, to pay or reimburse the reasonable, documented fees, costs, expenses, and liabilities of the Liquidating Debtor, (b) second, to distributions to holders of claims in Class 3A, and (c) third, if applicable, to the holders of Claims or Equity Securities in Class 4. The Liquidating Debtor may make the payments by check, wire, or any other reasonable method in the Liquidating Debtor's discretion.   There shall be no distributions under $50, and any distributions under such amount shall be held in reserve and distributed in subsequent distributions. Any distributions shall revert to the Liquidating Debtor if it is not claimed by the beneficiary within three (3) months after the date of such distribution. If such distribution is not claimed within that time frame, the remaining claim and any potential distribution shall be deemed to be reduced to zero under Section 347(b) of the Bankruptcy Code and returned to the Liquidating Debtor. The Liquidating Debtor will have no obligation to attempt to locate any holder of a claim or equity interest other than by reviewing the Debtor's Schedules and any proofs of claim filed against the Debtor.

**H)**    **Payment of Manager/Liquidating Professionals.** No Bankruptcy Court approval shall be required prior to the payment of amounts due and owing to the Manager or Liquidating Professionals; *provided*, that the Manager shall be required to obtain Bankruptcy Court approval before paying the Manager or any Liquidating Professional more than $25,000 for services rendered in a single month. The Manager may pay any and all amounts due and owing to the Manager and Liquidating Professionals from Liquidating Assets following receipt of the subject invoice(s). Notwithstanding the foregoing, (a) Manager shall seek Bankruptcy Court approval of his or her fees and expenses on a final basis upon completion of all Distribution(s) provided under the Plan, and (b) Liquidating Professionals shall seek final approval of all fees and expenses upon, the earlier of, (i) withdrawal or termination of the Liquidating Professional or (ii) completion of all Distribution(s) provided under the Plan.

**8.08**   **Retention of Jurisdiction**    The Bankruptcy Court will continue to retain jurisdiction in this Chapter 11 Case to determine or take any actions related to the implementation, effectuation, interpretation or enforcement of the Plan or any other matters affecting or pertaining to the Plan, the Debtor, and/or the Liquidating Debtor, or administration of any Assets or Liquidating Debtor Assets under this Plan, including, without limitation, any adversary proceedings or proceedings related to or arising out of the Chapter 11 Case.

## ▰ Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

     (i) imposed by this Plan; or

     (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

     (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

     (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ▰ Article 10: Other Provisions

**10.01**   **Objections to Claims and Interests**    The Liquidating Debtor shall file any objections to Claims and Equity Securities no later than the date that is 120 days after the Effective Date. The Liquidating Debtor may file a motion seeking to extend the Claim Objection Deadline. Such motion must be filed before the Claim Objection Deadline, as amended or extended. The Claim Objection Deadline shall be extended automatically, and without further order of the Bankruptcy Court, during the pendency of such a motion and, if the motion is denied, for a period of seven (7) calendar days following entry of a Final Order denying the motion for an extension.

**10.02  Subordination of Claims**   The Debtor or Liquidating Debtor, as applicable, shall have the power and authority to seek to subordinate any Claim or Equity Security pursuant to Section 510 or other applicable law or equitable principles.  To the extent any Claim is subordinated pursuant to Section 510(b), or an equivalent law or provision, such Claim shall be treated as a Subordinated 510(b) Claim in Class 4 of the Plan.   Section 510(b) provides, in pertinent part, that:

> [A] claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security….

11 U.S.C. § 510(b).   Based on information currently available to the Debtor, the Repurchase Claims appear to qualify for subordination under Section 510(b) and the Debtor current intends to request a ruling by the Bankruptcy Court as to whether Section 510(b) applies to the Repurchase Claims.

**10.03  Court Approval**   Despite being vested with full operational and managerial control of the Liquidating Debtor, the Manager (i) may seek Bankruptcy Court intervention for any reason, and (ii) shall obtain Bankruptcy Court approval for: (a) any settlement or compromise of a Cause of Action pursuant to which either (1) the Liquidating Debtor shall receive more than $50,000 (excluding any portion of any payments received on behalf of any client of the Debtor or other third party) or (2) the Liquidating Debtor must pay more than $25,000 (excluding any portion paid or to be paid under any insurance policy); (b) any sale of Liquidating Assets valued at more than $25,000; and (c) any payments to the Manager or any Liquidating Professionals in excess of $25,000 in any month.

**10.04  Post-Confirmation Status Reports**   Within 120 days of the entry of the Confirmation Order, the Liquidating Debtor will file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the Office of the United States Trustee and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.  The Liquidating Debtor shall subsequently file quarterly status reports with the Bankruptcy Court until all Liquidating Debtor Assets have been liquidated and all distributions contemplated under the Plan have been made.  The Liquidating Debtor shall file a final report and request to close the Chapter 11 Case as soon as possible after making final distributions.

**10.05  Preservation, Prosecution, and Defense of Causes of Action**   Except as set forth herein, upon confirmation of the Plan, the Liquidating Debtor shall have, retain, reserve and be entitled to assert all claims and Causes of Action whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real party-in-interest in any such actions commenced by or against either Debtor or the Estate.  The Liquidating Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Manager; *provided, however*, that the Manager shall be authorized at any point in any litigation (a) to enter into such settlements as deemed by the Manager to be in the best interest Creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Manager deems such action to be in the best interest of Creditors without Bankruptcy Court or other approval.

**10.06  Injunction Against Interference with Plan**   UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND EQUITY SECURITIES AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AND AFFILIATES, SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.

**10.07 Exculpation from Liability**    The Debtor and its respective partners, managers, officers, and directors, and Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any holder, person or entity for any act taken or omitted to be taken in good faith in connection with or related to the filing of the Debtor's Chapter 11 Case, and the formulation, preparation, dissemination, or confirmation of the Plan, any plan document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case; *provided, however,* that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor its Professionals have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the causes of action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date. Notwithstanding the foregoing, the Debtor, Liquidating Debtor, and Manager, as applicable, shall remain obligated to make payments to holders of Allowed Claims and Equity Security Holders as required pursuant to the Plan.

**10.08 Modification of Plan**    The Debtor or Liquidating Debtor may seek to amend or modify this Plan in accordance with Section 1127(b), to remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**10.09 Entire Agreement**    On the Effective Date, the Plan, any supplements or modifications to the Plan, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjections, all of which have become merged and integrated into the Plan. Unless expressly stated otherwise in the Plan, all prior written and oral agreements, understandings, or contracts between the Debtor and all holders of Claims or Equity Securities are terminated and replaced in their entirety by the provisions of the Plan.

10.11    Notices

All notices, requests, and demands to or upon the Debtor or the Liquidating Debtor, as applicable, to be effective shall be in writing (including by email or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, and addressed as follows:

To the Debtor or Liquidating Debtor:

Ericksen Arbuthnot Liquidating Debtor
Attn: Kyle Everett, DSI
150 Post Street
Suite 400
San Francisco, CA 94108

With a copy to:

Baker & Hostetler LLP
Attn: Andrew Layden
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801

Respectfully submitted,

X _____          Kyle Everett
   [Signature of the Plan Proponent]        [Printed name]

X _____          Andrew Layden
   [Signature of the Attorney for the Plan Proponent]    [Printed name]

10.11    Notices     All notices, requests, and demands to or upon the Debtor or the Liquidating Debtor, as applicable, to be effective shall be in writing (including by email or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, and addressed as follows:

To the Debtor or Liquidating Debtor:

Ericksen Arbuthnot Liquidating Debtor
Attn: Kyle Everett, DSI
150 Post Street
Suite 400
San Francisco, CA 94108

With a copy to:

Baker & Hostetler LLP
Attn: Andrew Layden
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801

Respectfully submitted,

X _____          Kyle Everett
[Signature of the Plan Proponent]            [Printed name]

X _____          Andrew Layden
[Signature of the Attorney for the Plan Proponent]    [Printed name]