Lauren Attard (SBN 320898)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone 310.820.8800
Facsimile 310.820.8859
Email: lattard@bakerlaw.com

Andrew V. Layden
*Admitted Pro Hac Vice*
BAKER & HOSTETLER LLP
200 S. Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone 407.649.4000
Facsimile 407.841.0168
Email: alayden@bakerlaw.com

Michael T. Delaney (SBN 261714)
BAKER & HOSTETLER LLP
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44144
Telephone 216.861.7478
Facsimile 216.696.0740
Email: mdelaney@bakerlaw.com

*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM, INC.,<br><br>   Debtor.<br><br>Tax I.D. No. 9402271850 | Case No.: 23-40134-WJL<br><br>Chapter 11 Case<br><br>**DEBTOR'S MEMORANDUM IN SUPPORT OF CONFIRMATION OF PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11**<br><br>Date: June 21, 2023<br>Time: 10:30 a.m. Pacific Time<br>Place: U.S. Bankruptcy Court<br>      1300 Clay Street, Courtroom 220<br>      Oakland, CA 94612<br>Judge: Hon. William J. Lafferty, III |

Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc. (the "Debtor"), by and through undersigned counsel, submits the following Memorandum of Points and Authorities in support of

confirmation of *the Plan of Reorganization for Small Business Under Chapter 11* (Doc. No. 107) (the "Plan").[1] Confirmation of the Plan is supported by the *Declaration of Kyle Everett in Support of Chapter 11 Petition and First Day Motions* (Doc. No. 3); the *Declaration of Kyle Everett in Support of Confirmation of the Plan of Reorganization for Small Business Under Chapter 11* (the "Confirmation Declaration"), which is being filed simultaneously with this Memorandum; and the record before the Bankruptcy Court in this case.[2]

## I. INTRODUCTION AND BRIEF BACKGROUND

The Debtor, a California law firm with a 70-year history in the state, filed this small business bankruptcy case to (i) preserve and maintain its assets while safeguarding client funds and records pending return or transfer of those items to new counsel, (ii) complete an orderly winddown of the Debtor's operations, (iii) surrender its leased premises, (iii) administer its remaining assets, (iv) and distribute the proceeds through a confirmed Plan. As of the Petition Date, the Debtor's assets consisted primarily of cash on hand; accounts receivable and work in progress; and various office fixtures, furniture, and equipment.

Since the Petition Date, the Debtor has continued efforts to maximize the value of its assets for all stakeholders for distribution pursuant to the Plan—satisfying its bankruptcy goals and objectives. This has included, among other things, (i) finalizing billings, (ii) transferring matters and files to new counsel, (iii) collecting accounts receivable, (iv) winding down operations, and (iv) appropriately storing and handling client information.

The Debtor filed its Plan on May 3, 2023, and is now seeking confirmation of the Plan. The Plan proposes to pay the Debtor's creditors from cash on hand as of the Effective Date of the Plan and net proceeds from the collection of all other assets of the bankruptcy estate. The Plan complies with all requirements of the Bankruptcy Code[3] to achieve confirmation and should be confirmed.

---

[1] Unless otherwise stated, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2] Objections to confirmation are due the same date as this Memorandum. Accordingly, the Debtor reserves the right to address any objections in a supplemental response in advance of confirmation.

[3] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq*.

- 2 -

## II. SUMMARY OF THE PLAN

The Plan contemplates that on the Effective Date, the Debtor shall become a Liquidating Debtor subject to the terms of the Plan and shall function solely to liquidate and administer the assets of the Debtor and bankruptcy estate for the benefit of creditors and interest holders. The Liquidating Debtor is authorized to take any and all actions that may be necessary or appropriate to implement the Plan. Article 10 of the Plan discusses the post-Effective Date operations of the Liquidating Debtor. The classification and treatment of claims and interest is set forth below.

Class 1 consists of Allowed Priority Claims. Class 1 is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 1 shall receive: (i) Cash in an amount equal to such Allowed Priority Claim on the Effective Date, or as soon thereafter as is reasonably practicable, or if disputed, as provided elsewhere in the Plan; or (ii) such other treatment to which the Debtor and the holder of the Allowed Priority Claim may agree. Allowed Class 1 Claims are Unimpaired, and as such, are not entitled to vote on the Plan. The Debtor anticipates that the priority portion of the Safe Harbor Nonelective Contribution Claim will be the only Priority Claim. To the extent any portion of the Safe Harbor Nonelective Contribution Claim is not deemed to be a Priority Claim, it shall constitute an Allowed Class 3B Claim. The Safe Harbor Nonelective Contribution Claim is the amount due from the Debtor, acting as a fiduciary, to the Ericksen et. al., Inc. 401(k) Savings Plan, the failure to pay timely which may lead to (i) the inability of the Debtor to deduct the payments on its tax return, (ii) the triggering of various tax compliance testing processes for which the Debtor would need to retain tax advisors, (iii) an audit by the IRS for which the Debtor would need to retain tax advisors, (iv) ultimately, if certain conditions are met, the disqualification of the 401(K) Savings Plan, which could result in all funds in such plan being treated as immediately taxable to all participants, including many of the Debtor's former employees, and require the Debtor to retain tax advisors to advise on the effects of same and whether the Debtor's tax returns would need to be amended or modified for previous years and the effects on same on the Debtor's former employees; and (v) the IRS having substantial priority tax claims against the Debtor that could significantly reduce or eliminate certain other payments

contemplated by the Plan.

Class 2A consists of the Claim of Bank of the West, to the extent allowed as a Secured Claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Allowed Class 2A Claims are Unimpaired, and as such, are not entitled to vote on the Plan. The Debtor anticipates Allowed Class 2A Claims to be $0 - $1,000.

Class 2B consists of the Claim of Corodata Records, to the extent allowed as a secured claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Allowed Class 2B Claims are Unimpaired, and as such, are not entitled to vote on the Plan. The Debtor anticipates Allowed Class 2B Claims to be approximately $6,303.76.

Class 2C consists of the Claim of Iron Mountain, to the extent allowed as a secured claim under Section 506. Class 2A is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 2A shall receive payment in full on the later of the Effective Date or the date on which such claims become Allowed, with interest to the extent necessary to render the Claim Unimpaired. Class 2C Claims are Unimpaired, and as such, are not entitled to vote on the Plan. The Debtor anticipates Allowed Class 2C Claims to be approximately $3,176.62.

Class 3A consists of Allowed General Unsecured Claims. In full satisfaction of Allowed Claims in Class 2C, each holder of an Allowed Claim in Class 3A shall receive its pro rata share of the Class 3A Distributions until each Holder has received the Allowed amount of such Holder's Class 3A Claim, with all incurred interest from the Petition Date through the date such Claims are paid in full. Interest shall accrue at the prevailing federal judgement rate of interest. Class 3A Claims are Impaired, and as such, are entitled to vote on the Plan. The Debtor estimates the amount

of General Unsecured Claims pending against the Debtor is approximately $1.9 million, exclusive of the Repurchase Claims, and approximately $4.5 million, inclusive of the Repurchase Claims (both amounts are prior to any claims objections or requests to subordinate claims)

Class 3B consists of the Allowed Safe Harbor Nonelective Contribution Claims. The Safe Harbor Nonelective Contribution Claim shall be deemed Allowed in the amount of $288,792.33 less any amounts included as Allowed Class 1 Claims. Class 3B is Unimpaired by the Plan, and in full satisfaction of such claims each holder of an Allowed Claim in Class 3B shall receive: (i) Cash in an amount equal to such Allowed Class 3B Claim on the Effective Date, or as soon thereafter as is reasonably practicable; or (ii) such other treatment to which the Debtor and the holder of the Allowed Class 3B Claim may agree. Class 3B Claims are Unimpaired, and as such, are not entitled to vote on the Plan. The Debtor anticipates Allowed Class 3B Claims to be the Safe Harbor Nonelective Contribution claim of $288,792.33, less any amounts of such claim treated as an Allowed Class 1 Claim.

Class 4 consists of (i) Allowed Equity Security Interests, and (ii) Allowed Subordinated 510(b) Claims. In full satisfaction of Allowed Claims in Class 4, each holder of an Allowed Claim in Class 4 shall receive distributions from the Liquidating Debtor in accordance with their respective percentage Interests in the Debtor after payment in full of all unclassified and classified claims and after taking into account any amounts paid by the Debtor on account of such Equity Security Interests. Class 4 Claims are Impaired, and as such, are entitled to vote on the Plan. The Debtor notes that Repurchase Claims of approximately $2.5 million were filed against the Debtor as general unsecured or priority claims, and the Debtor plans to file a motion or adversary proceeding asking the Bankruptcy Court to determine whether such claims should be subordinated under Section 510(b) of the Bankruptcy Code. To the extent the Repurchase Claims are subordinated, they shall be Class 4 Claims. To the extent the Repurchase Claims are not subordinated, they shall remain Class 3A Claims.

### III. THE PLAN SHOULD BE CONFIRMED BECAUSE IT MEETS ALL CONFIRMATION REQUIREMENTS FOR A SUBCHAPTER V CASE

Bankruptcy Code Sections 1191(a) and (b) incorporate all the plan confirmation

requirements of Section 1129(a) (except that compliance with paragraph (15) of Section 1129(a) is not a requirement for confirmation under either Sections 1191(a) or (b)). If the requirements of Sections 1129(a)(8), (10), and (15) are not met, then Section 1191(b) permits the court to confirm the plan if the plan does not discriminate unfairly and is fair and equitable as to the classes of creditors and interests that did not accept the Plan.

In this case, all applicable requirements of Section 1129(a) are met and thus the Plan can be confirmed under Section 1191(a). Alternatively, even if the Court were to find that the Debtor did not satisfy Section 1129(a)(8), (10), or (15), confirmation is still appropriate under Section 1191(b) of the Bankruptcy Code.

A plan proponent must demonstrate each element of Section 1129 by a preponderance of evidence. *In re Arnold & Baker Farms*, 177 B.R. 648, 654 (9th Cir.B.A.P.1994), aff'd, 85 F.3d 1415, cert. denied, 519 U.S. 1054 (1997). Additionally, the Court may consider the entire record in the bankruptcy case when considering confirmation. *In re Acequia, Inc.*, 787 F.2d 1352, 1359 (9th Cir. 1986).

**Section 1129(a)(1)**: A court may confirm a chapter 11 plan only if "[t]he plan complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). "Those applicable provisions generally concern whether the proposed plan contains the terms both required or permitted by Section 1123, and that the designation of classes included in the proposed plan complies with Section 1122." *In re Islet Scis., Inc.*, 640 B.R. 425, 457–58 (Bankr. D. Nev. 2022). Section 1122 is satisfied because the Plan only places claims in classes that are substantially similar. Section 1123(a) is satisfied because the Plan designates classes of claims and interests, specifies whether the classes are impaired or unimpaired, specifies the treatment of any class that is impaired, provides the same treatment for each claim in a particular class unless otherwise agreed to, describes adequate means to implement the Plan, and is consistent with the best interests of the creditors and equity security holders. Section 1123(b) provides that a Plan may contain certain other provisions, some of which are applicable in this case. For example, the Plan may provide for the assumption of any not previously rejected executory contract (*see* Section 6.01 of the Plan) or the

- 6 -

Plan may provide for the retention and enforcement of claims or interests by the Debtor or Trustee (*see* Section 10.05 of the Plan). Separately, Section 1190(1) of the Bankruptcy Code provides that a subchapter V plan must include a brief history of the business operations of the debtor, a liquidation analysis, and projections about the debtor's ability to make the required plan payments. The Plan includes those requirements. Accordingly, Section 1129(a)(1) is satisfied.

**Section 1129(a)(2)**: This section mandates that "[t]he proponent of the plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). The primary purpose of this section is to ensure that the proponent has complied with the disclosure and solicitation requirements of Sections 1125 and 1126. *In re Juarez*, 603 B.R. 610, 626 (B.A.P. 9th Cir. 2019), aff'd, 836 F. App'x 557 (9th Cir. 2020). Section 1125 is inapplicable unless the Court orders otherwise (which it did not in this case). Additionally, plan modification is controlled by Section 1193, which provides: "The debtor may modify a plan *at any time* before confirmation, but [the debtor] may not modify the plan so that the plan as modified fails to meet the requirements of sections 1122 and 1123…" 11 U.S.C. § 1193. Here, the Debtor has complied with all applicable disclosure and solicitation requirements of the Bankruptcy Code, and any proposed plan modifications will comply with Section 1193. Accordingly, Section 1129(a)(2) is satisfied.

**Section 1129(a)(3)**: A bankruptcy court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). This section does not define good faith. Courts have described that a plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Sylmar Plaza, L.P.*, 314 F.2d 1070, 1074 (9th Cir. 2002). Here, the Plan is proposed in good faith because it achieves the orderly liquidation of the Debtor, maximizes the value of the Debtor's estate, and provides a means for administration of creditor claims, all of which are consistent with the objections and purposes of the Bankruptcy Code. The Plan is not proposed by any means forbidden by law. Accordingly, Section 1129(a)(3) is satisfied.

**Section 1129(a)(4)**: A bankruptcy court may confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property

under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable." 11 U.S.C. § 1129(a)(4). Pursuant to the Plan, the Bankruptcy Court must approve all professional fees and expenses before they may be paid (*see* Section 3.02 of the Plan). Accordingly, Section 1129(a)(4) is satisfied.

**Section 1129(a)(5)**: Subsection A requires the proponent of any plan to disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(i)-(n). Subsection B requires the proponent of a plan to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(a)(5)(B). The Plan discloses the post-confirmation structure and administration of the Liquidating Debtor, including the appointment of the Manager for the Liquidating Debtor (*see* Section 8.07 of the Plan), and the continued involvement of the Manager in the Debtor's winddown is consistent with public policy and will maximize the value of the Debtor's estate. Accordingly, Section 1129(a)(5) is satisfied.

**Section 1129(a)(7)**: This section requires that the plan be in the best interests of creditors and equity holders. With respect to each impaired class of claims or interests, each holder of a claim or interest in that class must either accept the plan or receive under the plan at least as much as it would receive on liquidation. This is often referred to as the "best interest of creditors test." *In re Bashas' Inc.*, 437 B.R. 874, 914 (Bankr. D. Ariz. 2010) (internal citations and quotations omitted). Under the Plan, Classes 3A and 4 are impaired. As demonstrated in the Liquidation Analysis attached to the Plan, in a chapter 7 liquidation, the amount available for distribution would be approximately 15% less than anticipated distributions under the Plan. Accordingly, Section 1129(a)(7) is satisfied.

**Section 1129(a)(8)**: This section is satisfied because all impaired accepting classes voted to accept the Plan. This is reflected in the Debtor's Ballot Summary filed on June 15, 2023 (Doc. No. 149).

**Section 1129(a)(9)**: This section generally requires that claims entitled to priority under section 507(a)(2) and (3) of the Bankruptcy Code be paid in full in cash on the effective date of the plan, unless the holder thereof has agreed to a different treatment of such claim. Here, the Plan complies with this section by providing that "Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in Cash (a) on the Effective Date if the Claim is then an Allowed Claim; (b) as soon as reasonably practicable after entry of an order Allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; or (c) upon such other terms as may be agreed upon by the holder of the claim and the Debtor." Accordingly, Section 1129(a)(9) is satisfied.

**Section 1129(a)(10)**: This section requires at least one impaired accepting class to accept the plan. Both impaired classes voted to accept the Plan, as demonstrated by the Debtor's Ballot Summary filed on June 15, 2023 (Doc. No. 149).

**Section 1129(a)(11)**: This section requires a plan be feasible to be confirmed. A plan is feasible if it "offers a reasonable prospect of success and is workable." *In re Farwest Pump Co.*, 621 B.R. 871, 891 (Bankr. D. Ariz. 2019) (internal citations and quotations omitted). Here, the Plan provides payments on the Effective Date and that the Liquidating Debtor make distributions and administer the remaining assets of the estate. It offers a reasonable prospect of success and will be supported through experienced restructuring professionals who have an in-depth knowledge of the Debtor's business operations, assets, and liabilities. The Debtor has more than sufficient cash on hand to pay all distributions required on the Effective Date. Accordingly, Section 1129(a)(11) is satisfied.

**Section 1129(a)(12)**: This section requires payment of certain statutory bankruptcy fees. Section 3.04 of the Plan provides that "All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective

- 9 -

Date." Accordingly, Section 1129(a)(12) is satisfied.

**Section 1129(a)(6), (13)-(16)**: These sections are inapplicable to this Plan.

**Section 1191(b)**: Finally, for the avoidance of doubt, if the Court were to find that any of sections 1129(a)(8), (10), or (15) are not met (which the Debtor asserts they are), the Plan may still be confirmed if the Plan does not discriminate unfairly and it is fair and equitable with respect to all nonconsenting classes. Here, to the extent this section applies, it is satisfied. The Plan (i) provides for distributions in accordance with the priorities set forth in the Bankruptcy Code, (ii) provides that unsecured creditors receive value, as of the effective date of the plan, equal to the allowed amounts of their claims, and (ii) provides that equity interests will be paid only to the extent funds are available after satisfaction of all creditor claims. Accordingly, the Plan is fair and equitable, does not discriminate unfairly, and should still be confirmed.

### IV. THE DEBTOR RESERVES THE RIGHT TO MODIFY THE PLAN AND TO ADDRESS PLAN OBJECTIONS

The Debtor may modify the Plan at any time before confirmation pursuant to 11 U.S.C § 1193(a). The Debtor reserves the right to modify the Plan prior to or at confirmation and may file a supplement or plan modification brief prior to the hearing on confirmation of the Plan. Additionally, because objections to confirmation are due today, the Debtor reserves the right to supplement this memorandum to address any confirmation objections.

Dated: June 16, 2023

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Andrew V. Layden*
Andrew V. Layden

*Attorneys for the Debtor*