15

Fear Waddell, P.C.
Peter L. Fear, No. 207238
Gabriel J. Waddell, No. 256289
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)
pfear@fearlaw.com

Attorney for DAVID J. FRANKENBERGER,
  Creditor

UNITED STATES BANKRUPTCY COURT

NORTHER DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM, INC.,<br><br>    Debtor(s). | Case No. 23-40134-WJL<br><br>**OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION DATED MAY 4, 2023**<br><br><br>Date: June 21, 2023<br>Time: 10:30 a.m.<br>Place: In-Person or Zoom Webinar/AT&T<br>    Telconference<br>    1300 Clay Street<br>    Courtroom 220<br>    Oakland, CA 94612<br><br>Judge: Hon. William J. Lafferty |

- 1 -

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

INTRODUCTION .............................................................................................................. 4

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 4

   I.     JURISDICTION ...................................................................................................... 4

   II.    STATEMENT OF FACTS ...................................................................................... 4

   III.   LAW AND ARGUMENT ...................................................................................... 10

     a.   The Plan Does not Comply with 11 U.S.C. § 1129(a)(7)........................................ 10

     b.    The Plan Does not Comply with 11 U.S.C. § 1123(a)(5), 1123(a)(7), or
1129(a)(5)(A)(ii).................................................................................................... 12

     c.   The Plan Does not Comply with 11 U.S.C. § 1129(a)(3)........................................ 13

     d.   The Plan Does not Comply with 11 U.S.C. § 1123(a)(1) .................................... 13

   IV.   CONCLUSION ..................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

In re Ambanc La Mesa Ltd. P'ship,

  115 F.3d 650 (9th Cir. 1997)............................................................... 10

**Statutes**

11 U.S.C. § 1123 ...............................................................................passim

11 U.S.C. § 1129 ..................................................................... 2, 10, 12, 13

11 U.S.C. § 1190 .................................................................................. 10

11 U.S.C. § 1191 .......................................................................10, 14, 15

28 U.S.C. § 157 ..................................................................................... 4

28 U.S.C. §§ 1334 ................................................................................ 4

**Rules**

F.R.B.P. 9019......................................................................................... 11

## INTRODUCTION

DAVID J. FRANKENBERGER, Creditor herein ("Frankenberger"), hereby objects to confirmation of Debtor's Plan of Reorganization dated May 4, 2023, and in support of that objection submits the following points and authorities:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### II.    STATEMENT OF FACTS

From October 1, 2020 to August 12, 2022, Debtor's Board of Directors consisted of attorneys/shareholders Joseph J. Minioza (Concord, CA), Von Ryan Reyes (San Jose, CA), David J. Frankenberger, William A. Jenkins (Sacramento, CA), Mark L. Kiefer/Angela Kim (Los Angeles, CA), Sharon Hightower (San Jose, CA), and Graham A. Cridland (Sacramento, CA). On or about August 12, 2022, David J. Frankenberger provided Debtor's Board of Directors with thirty (30) days written notice of intent to separate from Debtor's law firm. On that same day, shareholder William A. Jenkins provided Debtor's Board of Directors with thirty (30) days written notice of his intent to leave Debtor's law firm.

As of August 12, 2022, Debtor's Officers consisted of:  Joseph J. Minioza (President); Von Ryan Ryes (Treasurer); Sharon Hightower (Vice President); Graham A. Cridland (Chairman of the Board); and, David J. Frankenberger (Secretary).

Further, at all relevant times herein, James E. Therien, CPA ("JET") served as Debtor's Controller/Firm Administrator and Manager of Debtor's Corporate Office located at 570 Lennon Lane, in Walnut Creek, California. Carol Alice Therien ("CAT") is JET's wife and a principal

in an unrelated corporation commonly referred to as Retail Pacific, Inc. ("Retail Pacific"), a business surreptitiously operated, at all relevant times, by JET and CAT out of 570 Lennon Lane, in Walnut Creek, California.

On or about April 9, 2020, Debtor applied for a $1,487,500 SBA Payroll Protection Plan ("PPP") loan due to COVID-19. On or about May 6, 2020, a total of $1,487,500 was deposited in a separate bank account JET established at City National Bank. These funds, in turn, were utilized by Debtor to pay Debtor's payroll for approximately 3 and ½ months, resulting in an excess of $1,487,500 in funds in Debtor's General Account at City National Bank. After taxes were paid to the California Franchise Tax Board, approximately $1.38 million in excess "PPP" funds remained in Debtor's General Account at City National Bank.

At Debtor's Annual Shareholder Meeting in October 2020, Debtor's shareholders discussed that should be done with the approximate $1.38 million in excess "PPP" funds remaining in Debtor's General Account at City National Bank. In turn, in or about early-2021, Debtor's Board of Directors voted in favor of keeping the $1.38 million in excess PPP funds in Debtor's General Account at City National Bank and further voted that these funds totaling $1.38 million would not be utilized by Debtor without advance notice to all shareholders and a vote of Debtor's Board of Directors in favor of utilizing such funds for a specific purpose to be authorized by the Board of Directors. This policy was conveyed to JET and was repeated at numerous monthly Board of Director Meetings from early-2021 through June 2022, with JET in attendance at all such monthly Board of Directors meetings.

On October 5, 2021, Debtor's Board of Directors retained Van Dermyden Makus Law Corporation (Firm) to commence an independent investigation for Debtor regarding concerns raised by several employees working in Debtor's Corporate Office about the conduct of Firm

Administrator – Controller JET, as well as additional concerns about JET raised by departing employees in exit interviews and by other employees interviewed in the course of the investigation. The complaining employees claimed JET engaged in conduct implicating Debtor's Equal Employment Opportunity (EEO) policy and its Abusive Conduct Prevention policy.

On or about January 19, 2022, Leo Muniz from Van Dermyden Makus provided Debtor's Board of Directors with a written report confirming JET's violations of Debtor's Equal Employment Opportunity (EEO) policy and its Abusive Conduct Prevention policy. In or about February 2022, Debtor's Board of Directors voted unanimously to "separate from" JET as Debtor's Controller/Firm Administrator upon the stated grounds that the Board of Directors "did not trust" JET with Debtor's finances, and in view of the written report received from Leo Muniz of Van Dermyden Makus.

From February 23, 2022 to July 15, 2022, Debtor's Board of Directors actively negotiated a "Severance Agreement" with JET whereby Debtor would separate from JET in exchange for $110,000 in "severance pay" from Debtor to JET. JET's purported last day on the job with Debtor was scheduled for July 15, 2022; however, JET refused to execute his "offboarding paperwork" and/or the Severance Agreement that Debtor's Board of Directors presented to him.

On or about July 21, 2022, Debtor hired Ammar Latif to replace JET as Debtor's Controller/Firm Administrator. Debtor's Board of Directors, at that time, voted in favor of keeping JET employees with Debtor on a short-term basis to "train" Mr. Latif. In turn, on or about August 25, 2022, Debtor parted ways with Mr. Lattif as Debtor's replacement Controller/Firm Administrator.  On or about that same date, Mr. Lattif sent a note to Debtor's

Board of Directors explaining that he received no "supervision" and/or training from JET and questioned Debtor's accounting practices, stating that everyone does "accounting" at Debtor's Corporate Office "except real accountants."

As of February 2022, there was approximately $2.9 million in total funds – including $1.38 million in excess PPP funds, in Debtor's General Account at City National Bank. Only three (3) of Debtors employees – JET, President Joseph J. Minioza, and Treasurer Von Ryan Reyes – had access to these funds as held in Debtor's General Account at City National Bank.

As of June 28, 2022, Treasurer Von Ryan Reyes reported that Debtor had $931,122.29 in its General Account at City National Bank.

On August 10, 2022, Viorica "Vio" Stoenescu ("Stoenescu"), an employee in Debtor's Corporate Office, reported to Debtor's Board of Directors that Debtor would only have $214,841.33 remaining in its General Account at City National Bank after hitting "send" on Debtor's August 15, 2022 payroll, exclusive of the $110,000 offered to JET as "severance pay." In turn, on August 10, 2022 at or about 5:39 p.m., Debtor Treasurer Von Ryan Reyes sent an email message to Debtor's Board of Directors indicating, "I don't necessarily understand why… Over $1 million in PPP money has disappeared."

On May 24, 2022, shareholders David J. Frankenberger and Brett L. Runyon filed a Summons and Verified Complaint for Enforcement of Right to Inspect Records of Corporation, against defendant Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc., in Fresno County Superior Court ("FCSC") Case No. 22 CE CG 01589. The parties to FCSC Case No. 22 CE CG 01589 in turn stipulated to have Frankenberger, et al. v. Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Inc. heard by an agreed-upon arbitrator, the Honorable Stephen J. Kane (Ret.).

On September 29, 2022, Justice Kane issued an Interim Order in connection with FCSC Case No. 22 CE CG 01589, ordering, amongst other things, that Debtor produce the following financial documents to plaintiffs Frankenberger and Runyon: federal and state income tax returns; Articles of Incorporation; Bylaws and Amendments to Bylaws; profit and loss statements and annual balance sheets including "backup" documentation; all reimbursement checks paid to JET; bonus checks paid to JET; Debtor's IRA Form W-2's provided to JET; written employment contracts between Debtor and JET; written lease agreements and sub-lease agreements between Debtor and CAT dba Retail Pacific, Inc.; reporting showing the gross amount billed out to each client; RINA Accountancy & Advisors reports determining Debtor's stock value; unpaid bank promissory notes; bank account statements; reports showing "fixed expenses" sustained at each of Debtor's branch offices including the Corporate Office in Walnut Creek; and, all reports showing "variable expenses" sustained at each of Debtor's branch offices including the Corporate Office in Walnut Creek.

In November 2022, Debtor produced some documents to plaintiff Frankenberger and Runyon in response to Justice Kane's September 29, 2022 Interim Order but failed/refused to produce "backup" documentation for Debtor's profit and loss statements and annual balance sheets; certain reimbursement checks paid to JET; certain bonus checks paid to JET; written lease agreements and sub-lease agreements between Debtor and CAT/Retail Pacific, Inc.; full and complete bank account statements; and, backup documentation evidencing payments received and payments made by Debtor secondary to the bank account statements Debtor did produce.

At no time between February 2022 and August 10, 2022 did Debtor's Board of Directors vote in favor of allowing JET, Debtor President Joseph J. Minioza, and/or Debtor Treasurer Von

Ryan Reyes to utilize of the $1.38 million in excess PPP funds in Debtor's General Account at City National Bank as of February 1, 2022, and it appears JET utilized and/or embezzled all monetary funds in Debtor's City National Bank as of February 1, 2022, including, but not limited to, $1.38 million in excess "PPP" funds.

Debtor President Joseph J. Minioza gave his thirty (30) day written notice to Debtor in or about October 2022.

Debtor Treasurer Von Ryan Reyes remained with Debtor through December 31, 2022. Further, Mr. Reyes' San Jose-based partner/shareholder, Sharon Hightower, remained with Debtor through December 31, 2022.

JET remains a Debtor employee through the present date and is being paid by Debtor through Debtor's bankruptcy estate. (See April Monthly Operating Report, Doc. No. 130, at p. 19.)

Debtor filed the instant Bankruptcy Petition on February 3, 2023. In turn, appropriate law enforcement entities in Fresno and Contra Costa Counties initiated criminal investigations concerning the disappearance of approximately $2.9 million in missing funds, from Debtor, between approximately February 1, 2022 and August 10, 2022, as related to suspected fraud and embezzlement.

In December 2022, Debtor adopted a plan of dissolution and appointed a Dissolution Committee to oversee the wind down of Debtor. The Dissolution Committee consisted of Sharon Hightower, Von Reyes, and Terry Finch. The Dissolution Committee appointed Kyle Everett of Development Specialists, Inc. ("DSI") as Manager of the Debtor for purposes of the dissolution. (See Declaration of Kyle Everett at Doc. No. 3.)

# III.    LAW AND ARGUMENT

For Debtor's Plan to be confirmed, the Plan must meet certain requirements, including the requirements contained in 11 U.S.C. §§ 1123(a) (except for 1123(a)(8)), 1129(a) (except for 1129(a)(15)), 1190, and 1191. The Plan does not comply with Sections 1129(a)(7), 1123(a)(5), 1123(a)(7), 1129(a)(5)(A)(ii), 1129(a)(3), and 1123(a)(1), and for these reasons should not be confirmed.

### a.    The Plan Does not Comply with 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) requires that each individual creditor must have either accepted the plan or that the creditor is receiving more under the Plan than they would receive in a hypothetical Chapter 7 liquidation. That section provides as follows.

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date

Frankenberger has not accepted the Plan. Consequently, the Plan must pay Frankenberger more than Frankenberger would receive in a hypothetical Chapter 7 liquidation. It is important to note that "the debtor must prove that the creditors would receive as much under the Plan as they would receive in a liquidation under Chapter 7." In re Ambanc La Mesa Ltd. P'ship, 115 F.3d 650, 657 (9th Cir. 1997). In addition, "the bankruptcy court must make specific findings to determine whether each claim holder in the impaired classes would receive no less under the Plan than they would have received in a Chapter 7 proceeding." Id.

Frankenberger contends that Debtor has not met its burden to show that the Plan will pay more to Frankenberger than Frankenberger would receive in a Chapter 7 liquidation. First, and most importantly, Debtor's liquidation analysis states that the value of any causes of action is unknown and assumes that the value of those causes of action would be the same whether the Plan is confirmed or if the case were in Chapter 7. Frankenberger disagrees with this logic. If Debtor's existing management continues in place, Debtor will likely not pursue claims against Dissolution Committee members or JET related to the "disappearance" of over $1 million in PPP funds or other financial irregularities that brought about Debtor's bankruptcy case. If this case were converted to Chapter 7, an independent party would be tasked with investigating those claims and would more motivated to seek a fair recovery for creditors, including Frankenberger. In addition, the Plan does not appear to require any post-confirmation settlements of causes of action be subject to Bankruptcy Court approval pursuant to F.R.B.P. 9019. In Chapter 7, such settlements would be subject to Bankruptcy Court approval. The Chapter 7 process requiring transparency and Bankruptcy Court approval regarding any such settlements increases the value of those causes of action in Chapter 7.

Second, the liquidation analysis seems to assume that a Chapter 7 Trustee would be far less successful collecting accounts receivable than the Debtor would be. There is no explanation for why Debtor believes this to be so, and Frankenberger believes this is incorrect. In any event, Debtor bears the burden of proof as to plan confirmation and there is no evidence that this contention is correct.

Third, the Plan allows estate professionals to be compensated, apparently on an interim basis, without court order if the total monthly amount is less than $25,000. While this is subject to a final court approval process, the lack of transparency while the fees are being paid provides

Case: 23-40134    Doc# 157    Filed: 06/16/23    Entered: 06/16/23 18:20:53    Page 11 of 15

far less transparency in the process than would take place in Chapter 7, and likely would result in higher fees being incurred if the Plan is confirmed than if this case is converted to Chapter 7.

In sum, Debtor's liquidation analysis argues that there will be $443,150 more paid to creditors under the Plan than would be paid in a Chapter 7 liquidation. However, $300,000 of this amount is due to an unexplained 50% accounts receivable discount, and this does not take into account the financial benefit of having a court-appointed, independent Chapter 7 Trustee investigate Debtor's financial affairs. Frankenberger believes that he would receive a higher dividend in a Chapter 7 liquidation than the amount proposed in the Plan.

### b. The Plan Does not Comply with 11 U.S.C. § 1123(a)(5), 1123(a)(7), or 1129(a)(5)(A)(ii)

The Bankruptcy Code requires that any person appointed to serve in management of the Debtor post-confirmation be in the interests of creditors. Debtor's pre-bankruptcy Dissolution Committee has demonstrated that it is not acting in the best interests of creditors by continuing to employ JET and not taking action to recover the over $1 million in PPP money that "disappeared." Consequently, the Dissolution Committee's choice to manage Debtor, DSI, is not in the best interests of creditors, and a third-party trustee should be appointed to manage the investigation of Debtor's assets.

11 U.S.C. § 1123(a)(7) requires that the Plan must "contain only provisions that are consistent with the interests of creditors . . . with respect to the manner of selection of any officer, director, or trustee under the plan . . ." 11 U.S.C. § 1129(a)(2)(A)(ii) requires that "the appointment to, or continuance in, such office of [any individual proposed to serve as an officer of the debtor under the plan], is consistent with the interests of creditors." 11 U.S.C. § 1123(a)(5) requires that the Plan "provide adequate means for the plan's implementation."

Case: 23-40134    Doc# 157    Filed: 06/16/23    Entered: 06/16/23 18:20:53    Page 12 of 15

The Plan designates DSI as the post-confirmation Manager for Debtor. However, DSI was appointed by, and is presumably influenced by, the Dissolution Committee. The Dissolution Committee and DSI have continued to employ JET, even after Debtor's Board of Directors stated that JET should not be trusted with Debtor's finances in light of an independent financial report, and the disappearance of over $1 million in PPP funds. Presumably, the Dissolution Committee has neglected to inform DSI regarding the issues related to JET.

The Plan provides that the assets of Debtor, including causes of action, will be liquidated to pay creditors. One of the most important causes of action in the estate is related to the "disappearance" of over $1 million in PPP funds and other related financial improprieties, and it is imperative that the Debtor have a disinterested manager or trustee to pursue these claims. The Plan provides that DSI is to be retained as manager. Due to DSI's connection with the Dissolution Committee and employment of JET, it is unlikely that DSI would adequately pursue the claims against JET. Consequently, the Plan does not provide an adequate means for its implementation.

### c. The Plan Does not Comply with 11 U.S.C. § 1129(a)(3)

Section 1129(a)(3) provides that "[t]he plan has been proposed in good faith and not by any means forbidden by law." By continuing to employ JET and by not conducting an investigation into the "disappearance" of over $1 million in PPP funds, Debtor is not acting in good faith.

### d. The Plan Does not Comply with 11 U.S.C. § 1123(a)(1)

11 U.S.C. § 1123(a)(1) provides that the Plan shall "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests." The Plan has not clearly classified Repurchase Claims as either Class 3A or Class 4, so the effect of the voting of such claims is unclear with

regard to Plan confirmation. Section 1191(b) also requires that the Plan not unfairly discriminate against any impaired class that has not accepted the Plan.

The Plan states that "Class 4 consists of (i) Allowed Equity Security Interests, and (ii) Allowed Subordinated 510(b) Claims," and "[t]o the extent any Claim is subordinated pursuant to Section 510(b), or an equivalent law or provision, such Claim shall be treated as a Subordinated 510(b) Claim in Class 4 of the Plan." The Plan further notes that "the Repurchase Claims appear to qualify for subordination under Section 510(b) and the Debtor current intends to request a ruling by the Bankruptcy Court as to whether Section 510(b) applies to the Repurchase Claims." Repurchase Claims are defined as "Claims asserted by a current or former Equity Security Holder arising from or related to the Debtor's obligation to repurchase Equity Securities in the Debtor," and a list of filed claims is included for reference, including Claim 14 of Mr. Frankenberger.

Under Class 4, the Plan states "[t]o the extent the Repurchase Claims are subordinated, they shall be Class 4 claims. To the extent the Repurchase Claims are not subordinated, they shall be Class 3A claims."

Consequently, it is not clear if the votes of Repurchase Claims should be counted for Class 3A or Class 4, and this confusion becomes more of a problem after considering the votes that were cast and how those votes were summarized by the Debtor. Of the 11 non-insider ballots received by the Debtor, eight (8) ballots were based upon Repurchase Claims. Of these ballots, five voted against the Plan. However, the Debtor counted these ballots only in Class 3A, not Class 4. Of the three (3) Repurchase Claim ballots accepting the Plan, Debtor includes these ballots in both Class 3A and Class 4. By including the rejecting Repurchase Claims only in Class 3A and the accepting Repurchase Claims in both classes, Debtor seems to be arguing that both

1    Class 3A and Class 4 have accepted the Plan. Class 4 should not be deemed to have accepted the

2    Plan and Debtor should have to demonstrate compliance with Section 1191(b).

3          This illustrates the problem with the manner in which Debtor designated claims under

4    the Plan. Because the Plan does not designate which class the Repurchase Claims should be a

5    part of, the Plan does not satisfy the requirements of Section 1123(a)(1) and it unfairly

6    discriminates against Class 4 creditors in violation of Section 1191(b).

7    **IV.    <u>CONCLUSION</u>**

8          For all of these reasons, Mr. Frankenberger requests that the Plan not be confirmed.

9    Date:  _6/16/23_          FEAR WADDELL, P.C.

10                             By:  _/s/ Peter L. Fear_
                                 PETER L. FEAR, Attorney for
11                                 DAVID J. FRANKENBERGER

Case: 23-40134   Doc# 157   Filed: 06/16/23   Entered: 06/16/23 18:20:53   Page 15 of
15